**WYCOFF CO., Inc. v. PUBLIC SERVICE COMMISSION OF UTAH et al.**

No. 4293.

United States Court of Appeals, Tenth Circuit.

Dec. 19, 1951.

Rehearing Denied March 19, 1952.

Harold S. Shertz, Philadelphia, Pa. (Wayne C. Durham, Salt Lake City, Utah, on the brief), for appellant.

C. W. Ferguson, Salt Lake City, Utah, for appellees.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

Wycoff Company, Inc., is a Utah corporation engaged in the transportation of property as a common carrier by motor vehicle. Its business consists of transporting motion picture films and news reels between various picture exchanges in Salt Lake City and between individual exhibitors, both within and without the State of Utah. It holds a certificate of convenience and necessity as to its interstate transportations from the Interstate Commerce Commission, but has refused to acknowledge the jurisdiction of the Public Service Commission of Utah as to its transportation activities beginning and ending wholly within the State of Utah. When the Public Service Commission of Utah sought to exercise jurisdiction over such last named activities, Wycoff brought a declaratory judgment action in the United States District Court for the District of Utah for a judgment declaring that all of its activities were interstate and enjoining the State Commission from interfering with its transportation of motion picture film and news reels over its routes within Utah, as au-

thorized by the Interstate Commerce Commission. The trial court concluded that all transportation of film from the branch distributing offices of distributing companies located in Salt Lake City, Utah, to theatre exhibitors within the State of Utah and transportation of film from one theatre to another within the State was intrastate transportation, subject to the jurisdiction of the State Commission. The court entered an appropriate judgment that the State Commission was not interfering unlawfully with such operations and denied appellant the relief prayed for. The sole question on appeal is whether the intrastate transportations are nonetheless integral parts of interstate transportations.

Most picture films originate in the laboratories of national distributors in New York, New Jersey and Los Angeles. The distributors have set up a system of exchanges in various sections of the country, to which they send all motion picture film for exhibitors in a designated area. Such exchanges are maintained in Salt Lake City, Utah.

All motion picture houses (exhibitors) obtain their films from the national distributors under contract with them. Under such contract an exhibitor may designate the film he desires. He is, however, not entitled to any particular picture at any specified date. The contract is generally executed before a picture is released to the public. It provides that after a picture is released for public exhibition and becomes available for exhibition by the exhibitors, the distributor agrees to deliver a print of the motion picture to the exhibitor. The film is then sent to the exchange, in this case Salt Lake City, where it is processed and readied for exhibition. In the contract the distributor agrees to make delivery of the film contracted for "to the Exhibitor or to the Exhibitor's authorized agent, by delivery at the Distributor's exchange, or to a common carrier, or to the United States Postal authorities, *as the Distributor may elect.*"[1] The ex-

hibitor agrees to show the film at the designated date and, at the conclusion of such showing, transport it to the next exhibitor at his expense. Thus in rotation each exhibitor agrees to transport the film at his own expense until it reaches the last exhibitor, who then is obligated to deliver it at his cost back to the exchange, from where it is returned to the distributor for final disposal. No film is sold to the exhibitor. The distributor merely licenses the right to exhibit the film. The title at all times remains in the distributor. The inspection and processing of these films in the exchanges are necessary steps before the films can be reshipped to exhibitors' theatres for showing therein.

■ The legal principles which guide us in determining whether an intrastate shipment is in fact such or is a continuing part of an interstate shipment are clear and well defined. The difficulty as always comes when we seek to apply them to a given state of facts. As stated by the Supreme Court in United States v. Erie R. Co., 280 U.S. 98, 50 S.Ct. 51, 53, 74 L.Ed. 187, "the nature of the shipment is not dependent upon the question when or to whom the title passes * * *" or whether "the transaction is initiated or completed under a local bill of lading which is wholly intrastate, * * *" nor yet "by the fact that there may be a detention before or after the shipment on the local bill of lading". If there is a continuing intent that the goods shall be transported until they reach a designated place, the entire transportation is a continuing one, notwithstanding that there may be a temporary stoppage enroute for a particular purpose.[2] In Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 335, 87 L.Ed. 460, the Supreme Court reaffirmed these principles in the following language: "If the halt in the movement of the goods is a convenient intermediate step in the process of getting them to their final destinations, they remain 'in commerce' until they reach those points."

1. Emphasis supplied.

2. See Atlantic Coast Line R. R. Co. v. Standard Oil Co., 275 U.S. 257, 48 S.Ct. 107, 72 L.Ed. 270; and United States v. Erie R. Co., 280 U.S. 98, 50 S.Ct. 51, 74 L.Ed. 187, and cases cited therein.

■ Tested by these principles, we think the judgment must be reversed. The distributor did not lose interest in the continued transportation of a film when it reached the exchange. Under the contract, both it and the exhibitor contemplated and understood that the film should continue in transportation until it reached the exhibitor's theatre. The distributor had a continuing interest in the transportation of the film beyond the exchange. While the distributor agreed to make delivery of the film to the exhibitor "at the exchange, or to a common carrier, or to the United States Postal authorities," it retained the right to select the agency to which delivery should be made, for the purpose of continuing the transportation to the exhibitor's theatre. Elliott S. Windward, Manager of R. K. O. Pictures, Inc., testified that it exercised control over the shipper employed to transport the film from the exchange to the exhibitor. He testified that such a shipper "must have the proper credentials involving insurance and protection of the prints while in his possession; he must be a licensed carrier, and he must also be approved by the Home Office." As long as this control was exercised over the entire journey, it cannot be said that the film "came to rest" at the exchange, as that term is understood, in order to end interstate transportation. We conclude the parties to these contracts contemplated and obligated themselves to a continuous transportation of the film from the distributor to the various exhibitors and back to the exchange, interrupted only temporarily at the exchange for processing of the film and for allocation to the various exhibitors, and that the entire transportation constituted interstate commerce. This conclusion finds support in Republic Pictures Corporation v. Kappler, 8 Cir., 151 F.2d 543, 162 A.L.R. 228, Beggs v. Kroger Co., 8 Cir., 167 F.2d 700, and Transway, Inc., v. Exhibitors Delivery Service, Inc., 51 ·M.C.C. 263 (1950), upon facts similar to those before us.

Reversed.

## Supplemental Opinion.

■ Appellees have filed a petition for rehearing on the ground as alleged therein that the opinion of the court misconstrues and ignores fundamental and controlling facts and that the opinion presumes and is predicated in part on the presumption "that the film is neither within the State of Utah nor released for exhibition to the public at the time the contract is executed." An opinion speaks for itself and the fact that it may be misconstrued does not ordinarily require an opinion in support of an order denying a petition for rehearing, but in this case we feel that a statement is warranted, not only because we feel that the basis of the opinion is misconstrued, but also because the petition for rehearing in setting out evidence, which it is claimed we ignored, perhaps in advertently omits a part of the testimony of some witnesses which is essential to place such testimony in proper focus. To overcome the statement in the opinion that the distributors exercise control over the transporting agencies selected by the exhibitor to transport the film from the exchange to the theatre, petitioners quote the following from the testimony of Elliott S. Windward of R.K.O. Pictures, Incorporated:

"Q. Who determines which method of transportation will be employed? A. The Exhibitor."

For some reason petitioners overlooked the questions and answers which immediately follow the above question and answer, as follows:

"Q. Can you state whether or not your office exerts any control over what shipper will be employed? Must certain requirements be met by carriers for you to release films to it? A. He must have the proper credentials involving insurance and protection of the prints while in his possession; he must be a licensed carrier, and *he must also be approved by our home office.*

"Q. The home office requires approval? A. Yes."

But whether the distributor exerts or fails to exert supervision over the carrier delivering the film from the exchange to the exhibitor's theatre was but one factor considered in the opinion. It is neither possible nor wise to set out in detail all the

evidence upon which the court's conclusions are based. There is much criticism by the legal profession that opinions are too long and detailed and thus unduly encumber legal publications with matter that is of no subsequent value.

The basis of our opinion is that if there is a continuing intent that these films shall be transported until they reach their journey's end from whence they started, the entire journey is a continuing one, notwithstanding that there may be a temporary stoppage in transit for some particular purpose or purposes. We think the decisions by the Supreme Court cited in the opinions support this statement of the law. We are still of the view that when this yardstick is laid alongside of the basic facts in the case they support our conclusions.

The opinion does not assume, as stated in the petition for rehearing, "that the films are sent to the theatre exhibitors upon a completely pre-determined schedule." On the contrary, as pointed out, the opinion is predicated on the ground that the contracts between the distributor and numerous exhibitors all contemplate that a film will be sent from the distributor to the exchange and there will be delivered to an exhibitor and by him in turn be delivered to the next selected exhibitor and so in turn to all the exhibitors, until the last exhibitor by his contract is obligated to return it to the exchange.

■ Neither do we think the record sustains the point petitioners make that contracts for a film are not made until the film arrives at the exchange and the exhibitor has had an opportunity to screen or see the film. Such a conclusion would mean that a separate contract would be executed with respect to each film, selected only after the film had reached the exchange and had there been viewed by the exhibitor. We think the record is without dispute that most, if not all, contracts are contracts covering a considerable period of time; that in many instances they are made before the film has been completed and at least before it is ready for delivery for exhibition and that they are executed prior to the time the exhibitors see

any particular film or before the film has reached the exchange in Salt Lake City.

It is without dispute that all of the distributors have salesmen who go out in the territory and solicit business. They have no power to make a binding contract. All proposed contracts must be submitted to the distributor for approval. Thus, Wade, Representative of Universal International Film Exchange, testified that his company dealt in news reels and feature films; that sales representatives covered the territory, contacting the individual theatres for the sale or licensing of the films; that they wrote up the contract, submitted it to him and that he in turn submitted it to the home office and that this procedure applied to every subject. He testified that not all the films covered by the contracts were in his possession when it was executed; that the contracts were made prior to the actual shipment from the laboratory to him; that in many instances the film had not yet been produced when the contract was made. He testified further from his personal knowledge and experience that other exchanges handled the distribution of film in the same manner.

■ Windward, R.K.O. Representative, testified that there were different procedures for bookings; that salesmen secured a date and submitted it to the office; that the local office had no power to make a contract; that only New York had that power and that the home office also determined the play date of a picture. Walker, Branch Manager for Twentieth Century Fox, testified that on short subjects they wrote a contract on the basis of a year covering the entire product; that the March of Time was sold on a yearly basis and that such contracts are generally executed prior to the production of the subjects concerned therein. He did testify that they seldom solicited an account on feature products until they first had a trade showing, but his testimony makes it clear that the film in such cases had not come to rest so as to terminate the interstate transportation thereof; that at these trade showings there was present only one print. It is clear from his testimony that such print was not there for

delivery to a purchaser, but only for exhibit to prospective purchasers. The record is devoid of any evidence showing that the distributors accumulate a stockpile of films in the exchanges, where the exhibitors may go, make their selection, purchase what they want, and take it with them, as you do when you go to a retail merchandising store.

We adhere to our conclusion that the record makes it clear that the contracts between all the exhibitors and a distributor contemplate a continuing movement of a film from the distributor through the exchange to all of the exhibitors and from the last exhibitor back to the distributor from whence it came, interrupted only temporarily at the exchange for purposes of mutual benefit to all the parties.

The petition for rehearing is denied.