**FEATURE FILM SERVICE, INC.**

v.

**UNITED STATES of America et al. (two cases).**

**Nos. IP 70–C–184, 70–C–185.**

United States District Court,
S. D. Indiana,
Indianapolis Division.

June 22, 1972.

Revised Sept. 25, 1972.

Alki E. Scopelitis, Sommer, Tinkham, Barnard & Freiberger, Indianapolis, Ind., for plaintiff.

John H. D. Wigger, Dept. of Justice, Washington, D. C., Richard L. Darst, Asst. U. S. Atty., Indianapolis, Ind., James F. Tao, Interstate Commerce Comm., Washington, D. C., for defendants the United States and Interstate Commerce Comm.

Rudy Yessin, Frankfort, Ky., for defendant Indiana Transit Service, Inc.

Before CUMMINGS, Circuit Judge, and STECKLER and DILLIN, District Judges.

PER CURIAM.

These are separate actions brought before this three-judge court to annul and set aside two decisions of the Interstate Commerce Commission. There is no issue as to the court's jurisdiction of the parties and the subject matter.

In Cause No. IP 70-C-185, Feature Film Service, Inc., hereinafter referred to as Feature Film, attacks a decision of the Commission [1] holding that the transportation by plaintiff of motion picture film between points in Indiana is transportation in interstate commerce for which appropriate Commission authority is required. In Cause No. IP 70-C-184, Feature Film challenges a decision of the Commission [2] denying plaintiff's application for a certificate of public convenience and necessity authorizing the transportation of motion picture film, supplies, equipment and advertising material used in motion picture theaters between points in Indiana.

Feature Film, a motor common carrier operating solely within the State of Indiana, is engaged in the transportation of motion picture film, equipment, supplies, accessories, and advertising materials used in motion picture theaters pursuant to authority issued by the Public Service Commission of Indiana.

In reviewing an order of the Interstate Commerce Commission, as with any other administrative agency order, the Court is limited in scope by settled principles of administrative law. See Eastern Express, Inc., v. United States, 198 F.Supp. 256 (S.D.Ind.1961), affirmed per curiam, 369 U.S. 37, 82 S.Ct. 640, 7 L.Ed.2d 548 (1962); Chicago & E. I. R. Co. v. United States, 107 F. Supp. 118 (S.D.Ind.1952), affirmed per curiam, 344 U.S. 917, 73 S.Ct. 346, 97 L.Ed. 707 (1953). The Commission is presumed to have properly performed its official duties, and this presumption supports its actions in the absence of clear evidence to the contrary. Accelerated Transport-Pony Express, Inc., et al. v. United States, 227 F.Supp. 815 (D.Vermont 1964), affirmed 379 U.S. 4, 85 S.Ct. 43, 13 L.Ed.2d 21 (1964). This presumption stems from the deference due the Commission because of its familiarity with conditions in the industry which it regulates.

With the Commission's expertise in mind, it is the duty of this court to review the record and the conclusions reached by the Commission as governed by Section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

Unless in some specific respect there has been a prejudicial departure from requirements of law or an abuse of the Commission's discretion, the reviewing court is without authority to intervene, United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S. Ct. 687, 90 L.Ed. 821 (1946), or, in other words, orders of the Commission are not to be overturned on judicial review unless they were based on a mistake of law, or made without a hearing, exceed constitutional limits, are unsupported by the evidence, or for some other reason

---

1. This decision was served March 15, 1968, and rendered in Docket No. MC-C-5315, Indiana Transit Service, Inc. v. Feature Film Service, Inc. For the purpose of this opinion this action before the Interstate Commerce Commission shall be referred to as the "Complaint Case."

2. The decision was served December 17, 1969, and rendered in Docket No. MC-127110 (Sub-No. 2), Feature Film Service, Inc., Common Carrier Application. For the purpose of this opinion this action before the Interstate Commerce Commission shall be referred to as the "Application Case."

amount to an abuse of power. Oklahoma Corporation Commission v. United States, 235 F.Supp. 803 (W.D.Okla. 1964); State Corporation Commission of Kansas v. United States, 184 F.Supp. 691 (D.Kan.1959). If the order of the Commission lies within the scope of the statute which the Commission is authorized to administer and enforce, and if the order is based on adequate findings which in turn are supported by substantial evidence, the order may not be set aside by the court on review, even though the court may disagree with the Commission's conclusions. Chicago & E. I. R. Co. v. United States, 107 F.Supp. 118 (S.D.Ind.1952), affirmed per curiam, 344 U.S. 917, 73 S.Ct. 346, 97 L.Ed. 707 (1953).

■ The court's review of the evidence is, of course, governed by the "substantial evidence rule," and therefore the court's inquiry is limited to determining whether there is substantial evidence to support the findings or orders of the Commission. Findings or orders so supported are conclusive and binding on the court and may not, in the absence of some irregularity in the proceedings before the Commission or error in the application of rules of law, be set aside. Chicago & North Western Railway Co., et al. v. Atchison, Topeka & Santa Fe Railway Co., et al., 387 U.S. 326, 87 S.Ct. 1585, 18 L.Ed.2d 803 (1967). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. National Labor Relations Board, 340 U. S. 474 at 477, 71 S.Ct. 456 at 459, 95 L. Ed. 456 (1951); Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197 at 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

Indiana Transit Service, Inc., hereinafter referred to as Indiana Transit, filed a complaint with the Commission on October 14, 1966, alleging that Feature Film in transporting motion picture film between points in Indiana was operating as a common carrier in interstate commerce without authorization from the Commission as required by Section 206(a)(1) of the Interstate Commerce Act, 49 U.S.C. § 306(a)(1). The matter was assigned for handling under the Commission's "modified procedure," a system whereby evidence and arguments of the parties are submitted to the Commission in written rather than oral form.

Following a hearing in the Complaint Case before Hearing Examiner Edith H. Cockrill, the Examiner found that Feature Film was not in violation of the Interstate Commerce Act and recommended that the complaint of Indiana Transit Service, Inc. be dismissed.

The Examiner's findings disclose that Indiana Transit is a motor common carrier and holds authority from the Commission to transport motion picture film between points in Indiana, Kentucky, and Ohio. Prior to the time that Feature Film commenced operations in October 1965, Indiana Transit had approximately 150 film accounts in the State of Indiana, and at the time of the hearing leading to the Examiner's report and recommendation, served April 14, 1967, it had only two of these accounts. For the nine-month period beginning January 1, 1965, Indiana Transit's revenue from the transportation of film was $120,298.-00, and for the comparable period of 1966 it had realized only $2,617.00.

Feature Film denied that it was operating in interstate commerce, and therefore, subject to the provisions of the Interstate Commerce Act. The issues before the Examiner were whether the operations of Feature Film were interstate or intrastate, and if interstate, whether Indiana Transit was entitled to collect damages.

The Examiner found that the film was in all cases produced at points outside the State of Indiana, located generally on the West and East Coasts; that the film was consigned to the local distributor and was shipped to a distributor's exchange at Indianapolis by truck, rail or air. The film was then shipped to an exhibitor (a local theater) at some point within the State pursuant to a

contract entered into between the exhibitor and the local distributor as agent for the producer. The contract provided that the exhibitor designate the carrier which would transport the film from the exchange, be responsible for all transportation charges and return the film to the distributor or to another exhibitor as the distributor might direct. The Examiner found that the film was shipped by the producer to the distributor on a so-called "quota" basis which was explained to mean that the local distributor received a certain amount of film on a permanent basis and was responsible for selling it to exhibitors. The Examiner found that in 90 percent of the cases when exhibitors contracted for the film it was already in the State of Indiana or was due there as a part of the distributor's "quota" stock. The film might be stored at the exchange or it might be being shown by another exhibitor. The Examiner found that the "quota" film received by the distributor at the exchange was not destined to any particular exhibitor or group of exhibitors, and the producer or original shipper had no knowledge of the ultimate exhibitors. The local distributor determined when films had no more selling potential, and the films were either returned to the producer or delivered to salvage companies. The Examiner found that Feature Film acted as carrier of the film on behalf of the exhibitors which designated it as carrier, picking up film at the distributor's exchange, delivering it to the first contracting exhibitor and subsequently to another exhibitor or returning the film to the exchange.

In the hearing before the Examiner, Indiana Transit contended that the film was shipped to Indianapolis from outside the State of Indiana for use by exhibitors throughout the State with the understanding and intent that the film would be used in cities throughout the State and that it would not remain at Indianapolis, the movement being as continuous as practicable, and therefore an interstate movement.

By Report and Order of the Commission served April 14, 1967, the Examiner found that Feature Film's operations did not constitute interstate commerce and recommended that the complaint of Indiana Transit against Feature Film be dismissed. Indiana Transit filed exceptions to the Report and Order of the Commission, and in addition, by Order of the Commission served June 28, 1967, Film Carriers Conference of America Trucking Associations, Inc. and National Film Carriers, Inc. were granted leave to intervene in the proceedings and to file exceptions. Indiana Transit contended that the Examiner erred (1) in finding its verified statement vague and lacking in detail, (2) in failing to give sufficient weight to the contract governing the use of the film by the exhibitor, (3) in finding that it is the exhibitor who designates which carrier shall transport the film, (4) in basing the determination on hearsay evidence, and (5) in finding that the film may already be in the hands of the local distributor when the contract for its use is executed.

The intervenors in the Commission proceedings, with interest adverse to Feature Film, jointly contended that the Examiner erred in finding that the number of prints held by the exchange are determined on a "quota" basis and that the exhibitor alone selects the carrier. Further, they argued that the facts found to be controlling by the Examiner did not support her recommendation, and that to uphold the recommended dismissal would, in effect, render useless the interstate authority previously granted to film carriers.

The Commission, Review Board No. 2, found the Examiner's statement of the facts to be accurate in all material respects.

The Review Board pointed out that in determining the essential character of the commerce, the Commission, in the past, had relied most upon the fixed and persisting transportation intent of the shipper, and that the importance of this factor had been upheld, citing, for exam-

ple, Seaboard Air Line Ry. Co. v. Lee, 14 F.2d 439, 442 (E.D.N.C.1926). The Review Board noted that the transportation within a state of motion picture film which has been produced outside that state has usually been found to be in interstate commerce because of the continuing intent of the film producer to ship the film not just to a distributor but to a number of exhibitors served by the distributor's exchange. In this, the Review Board cited Transway, Inc. v. Exhibitors Delivery Service, Inc., 51 M.C.C. 263, and Wycoff Co. v. Public Service Commission of Utah, 195 F.2d 252 (10th Cir. 1951), rev'd on procedural grounds, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952).

The Examiner construed several facts in the case as negating any appearance of a continuing intent that the film was to move to a designated exhibitor with a stop for convenience at the Indianapolis distributor. The Review Board viewed these facts differently. The Board stated:

"First, as the examiner has observed, the majority of the contracts herein are not entered into until after the film reaches Indianapolis and the producer has no knowledge of the ultimate destination. This was true in Johnson Extension-Colorado Points, 72 M.C.C. 557, and Ephraim Freightways, Inc., Common Carrier Application, 78 M.C.C. 495, wherein the transportation of motion picture film within a State was also found to be in interstate commerce and substantially identical to the operations considered in the Transway and Wycoff cases. Second, some of the film consists of extra, or reserve prints and may therefore never move beyond the distributor. This was true in the Johnson case. Third, the exhibitor selects the agent or carrier to receive the film at the distributor's exchange and pays the transportation charges. This was true in the Transway case, supra. Fourth, no particular film is earmarked for any particular exhibitors

and the dates for showing may be determined after arrival of the film in Indianapolis. This was true in the Transway, Johnson, and Ephraim cases, supra; although in Film Transit Co. Common Carrier Application, 7 M.C.C. 485, this circumstance was considered to militate against an existing intention to ship the film in a continuous movement to anyone but the distributor."

Feature Film argued that the film was received on a "quota" basis without reference to exhibitors and that the local distributor assumed the risk of licensing the film to exhibitors. The Review Board, however, found that the typical contract was a license agreement between the producer and the exhibitor with the distributor acting as an agent for the producer.

From the record in the Complaint Case, the Review Board concluded that the facts therein were identical to those considered in the other cited Commission proceedings holding the movement to be in interstate commerce.

The Review Board concluded that it was clear from the evidence that the film is shipped to Indianapolis with the understanding and intent that it would not remain there, but on the contrary that it would be sent on to the individual exhibitor "in a movement as continuous as practicable." Thus the Commission, Review Board No. 2, concluded that the transportation performed by Feature Film is a part of the continuous movement for which appropriate Commission authority is required.

Feature Film filed a petition for reconsideration and rehearing with the Commission, to which replies were filed by Indiana Transit, Film Carriers Conference of America Trucking Associations, Inc., and National Film Carriers, Inc. By order of the Commission, Division 1, Acting as an Appellate Division, served March 15, 1968, Feature's petition for review was denied and the Complaint Case became administratively final.

We have read and examined the cases relied on by the Review Board, including the Motor Carrier Cases decided by the Commission, and we agree with the Board's conclusions. We could little improve upon the application of the cases cited by the Review Board to the facts in the record before the Commission in support of its disagreement with the Examiner.

■ The principle applicable in determining whether a shipment is one in interstate commerce was stated by the Court in *Wycoff, supra*, 195 F.2d at page 254:

"If there is a continuing intent that the goods shall be transported until they reach a designated place, the entire transportation is a continuing one, notwithstanding that there may be a temporary stoppage enroute for a particular purpose." See also State Corporation Commission v. Bartlett and Company Grain, 338 F.2d 495 at 496 (10th Cir. 1964).

In Walling v. Jacksonville Paper Co. (1942), 317 U.S. 564, at 568, 63 S.Ct. 332 at 335, 87 L.Ed. 460 the Supreme Court stated:

"[I]f the halt in the movement of the goods is a convenient intermediate step in the process of getting them to their final destinations, they remain 'in commerce' until they reach those points." See also Rangen, Inc. v. Sterling Nelson & Sons, Inc., 351 F.2d 851 (9th Cir. 1965).

Applying the principle as stated in *Wycoff, supra*, to the facts in the instant case, it is clear that notwithstanding the temporary stoppages in Indianapolis, the producer intends the film prints to move beyond Indianapolis to those exhibitors with whom the distributor contracts, and that the transportation from the exchange to the exhibitors and thereafter between the exhibitors, is part of a continuous movement in interstate commerce.

By reason of the foregoing, in this Court's Cause No. IP 70–C–185 we affirm the Commission's decision rendered in Docket No. MC–C–5315, served March 15, 1968.

On September 29, 1967, approximately three months before the Review Board's decision in the Complaint proceeding, Feature Film filed an application with the Commission, seeking a certificate of public convenience and necessity authorizing operation in interstate or foreign commerce as a common carrier by motor vehicle of motion picture film, supplies, and accessories, theater equipment and advertising equipment used in motion picture theaters, between points in Indiana, Louisville, and Jefferson County, Kentucky. The application was subsequently amended to include only points within the State of Indiana. In accordance with Section 205(a) of the interstate Commerce Act, 49 U.S.C. § 305(a), the Commission referred the application to a joint board for hearing and recommendation of an appropriate order.

Hearings were conducted on June 4 and 5, 1968, by a joint board which consisted of Mr. Jeffers, a member of the Public Service Commission of Indiana, and Mr. Gaitskill, of the Kentucky Department of Motor Transportation, with Examiner Scornson of the Commission present, to furnish any assistance required by the board. Indiana Transit opposed the granting of the application.

At the hearing before the Joint Board, Feature Film contended that Indiana Transit's services were inadequate because of its announced intention to discontinue deliveries at night. Feature Film argued that unless the authority sought was granted, the Indiana motion picture operations would be at the mercy of Indiana Transit, and consequently a public need for the proposed services had been established. Feature Film further contended that the motion picture industry had become disenchanted with Indiana Transit because of its proposal to discontinue nightime pickups and deliveries. Feature Film urged that since the Commission had not seen fit to enforce its opinion in the Complaint Case by the issuance of a cease and desist order, that it could be concluded that Fea-

ture Film was entitled to rely upon its opinion that the traffic in question was intrastate traffic pending the outcome of the Application proceeding or a final determination in the Complaint Case.

With respect to the question of its fitness, Feature Film took the position that operations under color of right could not be considered illegal and that past operations, although not necessarily controlling, were entitled to considerable weight in determining public need.

Indiana Transit, on the other hand, contended that Feature Film was not fit to obtain the authority sought because it had intentionally and flagrantly violated the Interstate Commerce Act after being admonished by the Commission not to render the services until it had acquired appropriate authority. Indiana Transit also claimed that Feature Film's operations during the fiscal year 1967–68 had been conducted at a loss of $16,000.00, and there had been no other showing that Feature Film was financially able to render the proposed services. Indiana Transit further contended that Feature Film had failed to show that a need existed for the services proposed; that the shippers' support for the application was based on preference occasioned by a proposal never inaugurated, and that preference is not a basic ingredient in a convenience and necessity application.

Indiana Transit also argued that past operations by Feature Film did not constitute evidence of a need for the service sought; that Feature Film had failed to sustain its burden of showing the inadequacy of the existing carriers, and that the lack of utilization of available facilities did not justify a grant of authority. It urged that its services were adequate, that it was prepared to meet the needs of the shippers and that as an existing carrier it should be afforded that opportunity.

The Joint Board was unable to agree upon a recommendation, and in accordance with the provisions of Section 205(b) of the Interstate Commerce Act, 49 U.S.C. § 305(b), the matter was re-ferred to an examiner for recommendation of an appropriate order.

The Hearing Examiner found that Indiana Transit is authorized to transport motion picture film and related materials between points in Indiana, both intrastate and interstate, and to provide similar services to Cincinnati and Louisville. The Examiner found that Indiana Transit and its predecessors had served the film industry in Indiana for more than forty years prior to 1965. During the latter part of 1964 Indiana Transit had a conference with members of the Film Transit Committee of Indiana theater owners concerning economic conditions confronting that portion of Indiana Transit's operations relating to the transportation of motion picture film and supplies. Subsequent to that meeting, an adjustment was made in the rates which produced additional revenues for Indiana Transit and provided the exhibitors with more equitable charges for the services performed. At a meeting held in Indianapolis on February 24, 1965, Indiana Transit announced its intention to change the weekly film schedules from three nighttime deliveries to five daytime and one nighttime delivery. This proposal was verbally opposed by the Film Transit Committee. In a letter dated March 18, 1965, addressed to Indiana exhibitors, notification was extended that Indiana Transit's daytime service would be placed in effect on April 5, 1965. In a letter dated March 15, 1965, received by Indiana Transit on March 19, 1965, the Chairman of the Film Transit Committee of Indiana theater owners notified Indiana Transit that the proposed discontinuance of nighttime deliveries during the week was unsatisfactory and unacceptable. On March 29, 1965, Indiana Transit wrote to the theater owners to the effect that one account had indicated its intent to discontinue the use of Indiana Transit's services and explained how such a loss of revenue would affect Indiana Transit's operations as well as jeopardize the services to all exhibitors. In this letter Indiana Transit explained that

revenues from the transportation of film had declined from $246,000.00 in 1958 to $164,000.00 in 1964, and that its operating expenses for that period had increased. Indiana Transit also called attention to the fact that in 1962 film revenue constituted 32% of its total business but during the first two months of 1965, the film revenue was only 15% of the total and that some changes were necessary in order that future operations could be continued.

The Examiner found that Indiana Transit never inaugurated its daytime film delivery service but continued the nighttime deliveries. When Feature Film received its certificate from the Public Service Commission of Indiana in September of 1965, the theater owners began to cancel the services of Indiana Transit and switch to Feature Film. Indiana Transit continued to provide the three nighttime services until all of the film traffic was divested from its handling.

With regard to Feature Film's operations the Examiner found that the exhibitors furnished Feature Film with booking schedules, and Feature Film then picked up the film prints at the State Film Company which is the agent for all the distributors. The film was then moved to Feature Film's terminal where it was routed by the drivers. During the summer season eight routes covering all points in Indiana, except for a few points in the vicinity of Chicago and Cincinnati, were operated. During the winter season seven routes were operated. Each route served approximately twenty cities. Each driver labeled the film for the particular exhibitor and loaded his truck. The trucks departed the terminal between 9:00 p. m. and midnight, delivered the film prints to the theaters and picked up the prints which had been exhibited, returning to Indianapolis between 8:00 and 10:00 a. m. The trucks returned to Indianapolis not later than 11:00 a. m. in order that some of the prints might be dispatched by bus or plane that afternoon. In the event the regularly scheduled truck encountered some difficulty and would not arrive in Indianapolis on schedule, Feature Film would provide emergency service in lieu of the anticipated bus service. Approximately 1,000 film prints were delivered each week by Feature Film. Advertising material, equipment and supplies accompanied the print. Approximately 80% of Feature Film's revenue accrued from the transportation of motion picture film and supplies.

The Examiner's report served May 2, 1969, recommended denial of the application on the grounds that Feature Film's fitness was "extremely doubtful," and that the evidence of record did not sustain a finding of public need for the services sought. The Examiner stated:

"The first issue involved herein is the fitness of the applicant. The record indicates that applicant transported the traffic involved herein since September, 1965 under color of right which was found to be unauthorized by the review board on December 15, 1967 and affirmed by Division 1 acting as an appellate division on March 8, 1968. However, applicant's attorney contends that the complaint proceeding is still pending as it can be appealed to the courts, and applicant may transport such traffic under color of right until the court finally determines the issues involved in the complaint proceeding. The Commission has found in a number of cases that the unauthorized operations under color of right will not preclude a finding of fitness where operations were not willful. No criminal actions against either the applicant or the exhibitors herein have been taken by the Commission's Bureau of Enforcement. However, it is the examiner's opinion that applicant's operations prior to the review board's decision in No. MC–C–5315 were under color of right but that all films transported by applicant since December 15, 1967 were in willful violation of Section 203(c) of the Interstate Commerce Act. The film traffic in issue had been deter-

mined to be interstate commerce by an authoritative board and applicant's right of appeal would not include a right to continue an unlawful operation. The operations conducted since December 15, 1967 completely disregarded a thorough and proper interpretation of the regulations governing such transportation. Furthermore, the record herein does not indicate that applicant's operations have been profitable or that its financial condition is impressive.

"While applicant's fitness is extremely doubtful, the record will not sustain a finding of public need for the services involved herein. The protestant holds the necessary operating authority and equipment to provide the services involved herein. The inadequacy of protestant's service is based solely on its effort to discontinue certain deliveries during the night which were alleged to be vital to the activities of the motion picture exhibitors in Indiana. Such proposal was never inaugurated by protestant. The record indicates that certain traffic involved herein requires pickups and deliveries during the night and the protestant is admonished to provide reasonably satisfactory service for its patrons. The record indicates that protestant has provided reasonably satisfactory service for its patrons and a mere proposal to curtail its services in order to reduce expenses would not justify a conclusion that protestant's services are not adequate to meet the needs of its shippers.

"Undoubtedly the motion picture exhibitors testifying in support of the application prefer applicant's service but a grant of a certificate cannot be based on a mere preference. In Walker Hauling Co., Inc., Extension—Carrollton, Ga., 82 M.C.C. 105, Division 1 at page 107 said

"'However, a grant of authority cannot be predicated upon a mere preference by a shipper for the services of a particular carrier or carriers. Also, we have consistently held that additional operations should not be authorized unless it is shown that the service of the existing carriers is inadequate to meet the reasonable transportation needs of the shipping public.'"

"Although the shippers have on isolated occasions encountered some minor difficulties in obtaining the type of service they prefer, the evidence is not convincing that the presently available transportation services provided by protestant are not adequate to meet their reasonable tranportation needs. The Commission has frequently found that existing carriers should normally be allowed to transport all of the traffic which they can handle adequately, economically, and efficiently to and from the points they serve without the added competition of a new service, and the examiner concludes that no real need exists for the proposed operations."

Feature Film filed exceptions to the Examiner's report and order, to which Indiana Transit filed a reply. By decision and order of the Commission, Review Board No. 2, served August 26, 1969, the application was denied. On September 25, 1969 Feature Film filed a petition for reconsideration to which a reply was filed. By order of the Commission, Division 1, Acting as an Appellate Division, served December 17, 1969, the petition was denied. Thereafter, at a General Session of the Commission, held January 12, 1970, Feature Film's petition, filed January 2, 1970, for a determination and announcement that the proceeding involved an issue of general transportation importance, was denied. In the judgment of the Commission, no issue of general transportation importance was involved. The Application Case then became administratively final.

Feature Film contends that the Commission's denial of its application for a certificate of public convenience and necessity was arbitrary and capricious and not supported by substantial evidence. Feature Film also offers what amounts to a similar argument with respect to

certain alleged procedural irregularities in the Application proceedings.

Section 207(a) of the Interstate Commerce Act, 49 U.S.C. § 307(a), provides that a certificate of public convenience and necessity shall be issued to any qualified applicant fit, willing, and able properly to perform the proposed service, and to conform to the provisions of the Act and the requirements and regulations of the Commission if the proposed service is or will be required by present or future public convenience and necessity. Although the Examiner's report, affirmed and adopted by the Commission, discusses the issue of "fitness," the report found that the record did not show a public need for the proposed service.

■ While "public convenience and necessity" has not been defined by the Interstate Commerce Act, the phrase should be interpreted in the light of prior judicial and administrative interpretation to secure for the nation the broad aims of the Interstate Commerce Act. Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945).

■ The adequacy or inadequacy of existing service is a basic ingredient in the determination of public convenience and necessity, but it is not and may not be used as the sole test in determining whether public convenience and necessity exist. See Schaffer Transportation Co. v. United States, 355 U.S. 83, 78 S. Ct. 173, 2 L.Ed.2d 117 (1957); Nashua Motor Express, Inc. v. United States, 230 F.Supp. 646 (D.C.N.H.1964). Successful past operations of the applicant, along with other factors, are also entitled to consideration in determining public need.

The plaintiff complains that the Commission failed adequately to discuss the other factors upon which it relied in reaching its ultimate conclusion of no public need, so that from all that appears in the decision the adequacy of existing service was the sole determinant. Plaintiff especially disputes the Commission's finding that plaintiff's operations after December 15, 1967, were not under color of right and complains that the Commission might have therefore impermissibly discounted plaintiff's successful past operations as a factor.

Indeed the Examiner's report adopted by the Commission leaves something to be desired in the way of articulating the basic factors considered in reaching the ultimate finding. Although the Commission would be well advised to discharge more conscientiously its basic administrative responsibility to elucidate its findings on the factors contributing to its conclusion, the instant decision does disclose, albeit somewhat indistinctly, consideration of other important elements.[3]

■ In Nashua Motor Express, Inc. v. United States, *supra* at 652, the Court noted that besides the adequacy of existing service "other elements of importance appear to be the desirability of competition, the desirability of different kinds of service, and the desirability of improved service." Here it is apparent that these elements were considered and found to militate against granting plaintiff's application. The Examiner's decision recited that this case fell within that category wherein the Commission has found that existing carriers should "be allowed to transport all of the traffic which they can handle adequately, economically, and efficiently to and from the points they serve without the added competition of a new service . . . ." In view of the profit histories of the plaintiff and the protestant and the essentially identical service rendered by

---

3. Undoubtedly part of the difficulty with the Commission's decision is the semantic one occasioned by its use of "inadequacy of protestant's service" both to refer to the quality of that service in its various aspects—a discrete factor in determining the notion of public convenience and necessity—and to refer to the composite of all factors which together make up that broad notion. See Nashua Motor Express, Inc. v. United States, 230 F. Supp. 646, 652 (D.C.N.H.1964).

each, the undesirability of competition here is adequately supported. With respect to the desirabilities of improved and different kinds of service, the Examiner's decision states that the distinguishing factor between plaintiff's and protestant's services, as well as the latter's sole material deficiency, was its never-effectuated proposal to discontinue night deliveries. On the basis of this record, the Commission could properly say that this alone did not make plaintiff's operations desirable from the standpoint of improved or different services. Moreover, the decision contains the judgment that the shippers' expressed preference for plaintiff's services was insufficient to establish their desirability. In the absence of material, factual superiority of plaintiff's services, such preference could be denied controlling weight.

■ Finally, even assuming the Commission erred in deciding plaintiff did not operate under color of right after the date of the Complaint Case decision, that would not vitiate the Commission's decision that no public need was shown.

■ Congress has delegated to the Interstate Commerce Commission the power to find the facts and to make the reasonable judgments involved in a determination of whether or not a certificate of public convenience and necessity should be issued. In the exercise of its administrative authority and discretionary judgment, and within congressional limitations, the Commission not only may promulgate standards for determining public convenience and necessity but is free to alter its policies and standards when in its judgment, the necessity arises. Thus the Commission has broad discretionary power to determine from its analysis of the total situation on which side of the controversy the public interest lies.

■ It is not the proper function of this Court on review to substitute its judgment for that of the Commission on matters of fact or mixed questions of fact and law as may have been committed by law to agency discretion. Nor are findings of fact by the Commission to be disturbed if based on substantial evidence.

■ The Court has examined each aspect of the Application Case and we are satisfied that the Commission applied the correct rule of law and that its order is based on adequate findings supported by substantial evidence. We do not find that the Commission acted arbitrarily or capriciously in making its findings nor that the Commission failed to observe procedures comporting with proper administrative determination.

Accordingly, in this Court's Cause No. IP 70–C–184 we affirm the Commission's decision rendered in its Docket No. MC–127110, served December 17, 1969.

Costs in Cause No. IP 70–C–185 and in Cause No. IP 70–C–184 shall be taxed against the plaintiff, Feature Film Service, Inc.

## ENTRY ON MOTION TO RECONSIDER and MOTION FOR ORAL ARGUMENT AND HEARING

By its decision of June 22, 1972, this Court denied the plaintiff's actions to annul and set aside two decisions of the Interstate Commerce Commission. In Cause No. IP 70–C–185 the Court affirmed the decision of the Commission holding that the transportation by plaintiff of motion picture film between points in Indiana is transportation in interstate commerce for which Commission authority is required. In Cause No. IP 70–C–184 the Court affirmed the Commission's decision denying the plaintiff's application for a certificate of public convenience and necessity authorizing the transportation of motion picture film, supplies, equipment, and advertising material used in motion picture theatres between points in Indiana. By exercising its discretion the Court

decided the cases on the basis of the pleadings and briefs without oral argument. Subsequently, on July 20, 1972, the plaintiff filed a motion to reconsider and a separate motion for oral argument and hearing. While the defendants opposed the motions as being without merit, they suggested that the Court reopen the cases solely for the purpose of receiving the certified administrative records.

The defendants also called to the Court's attention an inconsistency in the Court's decision dated June 22, 1972. It was pointed out that on page 198 of the decision the Court observed that "the Joint Board was unable to agree upon a recommendation, and . . . the matter was referred to an examiner"; that in the last paragraph on page 10 * of the decision it was stated that "the Joint Board found" certain facts; that since the Joint Board was unable to agree, it made no findings. Thus, the Court is issuing a revised opinion to correct the inconsistencies on pages 10 through 14 * and to add a sentence in the first paragraph on page 16 * following the word "denied" in the last sentence of such paragraph.

By its order of August 17, 1972, the Court reopened the cases and thereafter received the administrative records.

The Court having reviewed the certified administrative records finds that everything of a material nature was fully covered in the pleadings and briefs and the attachments thereto. Nothing contained in the administrative records presents a basis for a departure from the Court's original decision of June 22, 1972.

Wherefore, the Court having reviewed the administrative records, having considered the plaintiff's motion to reconsider and its motion for oral argument and hearing, together with the defendants' briefs in response thereto, and being duly advised in the premises, concludes that the plaintiff's motions should be, and the same are, hereby denied.

* Deleted in revised opinion of Sept. 25, 1972.