CHICAGO & E. I. R. CO. v. UNITED
STATES et al.

Civ. No. 486.

United States District Court,
S. D. Indiana, Terre Haute Division.

Aug. 27, 1952.

David O. Mathews, Thomas N. Cook and Gerald L. Phelps, Chicago, Ill., Hays & Hays, Sullivan, Ind., for plaintiff.

Marshall E. Hanley, U. S. Atty., Indianapolis, Ind., for defendant.

Matheson, Dixon & Brady, Detroit, Mich., Gilliom, Armstrong & Gilliom, Indianapolis, Ind., for intervening defendants.

Allen Crenshaw, Associate Chief Counsel, Washington, D. C., for Interstate Commerce Commission.

Before SWAIM, Circuit Judge, and PLATT and STECKLER, District Judges.

PLATT, District Judge.

In this case, which is properly presented to the court,[1] the plaintiff, Chicago and Eastern Illinois Railroad Company seeks to annul and permanently set aside certain orders of the Interstate Commerce Commission[2] which required plaintiff to cancel a reduction which it had made in its rate for carrying automobiles from Evansville, Indiana, to St. Louis, Missouri. The reduction was first proposed by plaintiff to the Commission in a tariff filed with it on March 10, 1950. Upon the filing of protests by two interested motor carriers and an association of such carriers, the proposal was ordered temporarily suspended and the matter was set down for a hearing before an examiner. After the hearing, and while related applications were pending before the Commission,[3] plaintiff

---

1. Our jurisdiction over both the cause and the parties thereto is admitted by the pleadings and is invoked under 49 U.S. C.A. § 17(9), 28 U.S.C.A. §§ 1336, 1398, 2284 and 2321 through 2325, and 5 U.S. C.A. § 1009.

2. Orders dated Sept. 21, Oct. 23, Dec. 3 and Dec. 20, 1951 under Investigation and Suspension Docket No. 5782, Automobiles, Evansville, Ind., to Missouri;

Fourth Section Application No. 25318, Automobiles from Evansville, Ind., to Southwest; and Fourth Section Application No. 25439, Automobiles from Evansville, Ind., to St. Louis, Mo. The Commission's original report appears at 283 I.C.C. 135.

3. Plaintiff applied for relief under Section 4 of the Interstate Commerce Act, 49 U.S.C.A. § 4, from the aggregate-of-in-

voluntarily suspended the effective date of the proposed reduction until March 12, 1951. The reduced rate was thereupon put into effect and remains in effect today, the Commission having extended the effective date of its order at the request of this court. Upon the filing of the complaint herein, the motor carriers and the association who were protestants in the proceedings before the ICC sought and were granted leave to intervene. The issues having been joined on the pleadings, the parties have filed briefs and argued orally before the Court.

The basic undisputed facts appearing from the findings of the Commission and the transcript of testimony before the Examiner, which has been filed herein, can be summarized briefly. The Chrysler Corporation operates a plant at Evansville for the assembly of Plymouth automobiles. Plaintiff is the only railroad directly serving this plant. From the start of Chrysler's occupancy of the plant in 1935 until 1940 or 1941 the bulk of the transportation of Plymouths from Evansville to St. Louis was handled by motor carrier but by the latter year plaintiff, by instituting substantial rate reductions, had captured a sizeable amount of such business. Except for stoppages caused by war, strikes and model changeovers, plaintiff continued to transport a substantial number of cars every month until March, 1947. After that time and until this reduction was adopted, plaintiff had no share in Chrysler's Business except for a shipment of five carloads of automobiles in March, 1949.

At the time of the hearing plaintiff's published tariff for the transportation in question was 62 cents per hundred pounds, as contrasted with the 64 cent rate of the competing motor carriers. In the course of conversations with the Chrysler corporation plaintiff was told that in order to regain a share of the business it should offer transportation at a rate at least 23 cents below that of the motor carriers. Chrysler explained this statement by showing that the additional costs of loading and unloading a rail car, over and above the cost of motor transport, were 13 and 10 cents, respectively. Plaintiff, having determined to meet this differential of 23 cents by establishing a tariff of 41 cents per hundred pounds, began these proceedings to establish such a rate. It urged that the reduced rate was compensatory and necessary to meet the competition of motor carriers, and that under the provisions of the Interstate Commerce Act, 49 U.S.C.A. Sec. 15(7), it had the right to meet such competition.

The bulk of the testimony and exhibits produced at the hearing before the Examiner dealt with statistics and analyses bearing upon plaintiff's ability to compete at such a rate. In the course of the transportation from Evansville it is necessary for plaintiff to switch the loaded cars from the Chrysler plant to the nearby Wansford yard, then to take them by through freight train to the Brewer yard near Danville, Illinois; the cars are then switched to the North yard in Danville and moved by a road engine to Villa Grove, Illinois, where they are picked up by a through freight train coming from Chicago and taken to the Mitchel yard near Madison, Illinois. At that point the cars are picked up by a transfer engine which transfers them to the Terminal Railroad Association at Madison for transportation to St. Louis. The return movement of the empty cars is over the same route. The total distance over plaintiff's line is approximately 345 [4] miles, and the round trip would take seven or eight days.

An average carload of four Plymouth automobiles weighs approximately 12,320 pounds. At the rate of 41 cents per hun-

termediates and long-and-short haul provisions of the Act, all of which was denied. Although the parties have not presented the court with any question as to the Commission's action in this respect, for the purposes of this opinion we will treat the proposal as if it had been limited to local traffic originating at Evansville and going only to St. Louis.

4. The Louisville and Nashville Railroad Company has a more direct route of only 168 miles, but does not directly serve the Chrysler plant. It has not proposed a reduced tariff and is not involved in this proceeding.

dred pounds, plaintiff thus realizes a gross revenue on this movement of approximately $50.51 per carload. From this amount plaintiff deducts a bridge and switching charge of $9.63 per car, paid to the Terminal Railroad Association, leaving a net revenue of $40.88. Over the entire line of 345 miles the reduced rate thus produces a net revenue of 11.84 cents per car-mile, or 1.924 cents per ton-mile; plaintiff's average system car-mile and ton-mile revenues for the year 1949 were 42.85 and 1.406 cents, respectively.[5]

In seeking to demonstrate that the reduced rate would be compensatory plaintiff offered testimony to establish a basis for cost studies which it had prepared on the movement of a carload of automobiles from Evansville to St. Louis and the return of an empty car over the same route. It first presented detailed analyses of the so-called "out-of-pocket" expenses incurred in the transportation of a hypothetical car of appropriate weight in trains which had actually made such movements during the months of February and March, 1950.[6] The resultant cost figures were $28.64 and $26.52, respectively, and included yard and road engine expenses for fuel, repairs, enginehouse, lubricants and supplies, an allowance for freight train car repairs, supplies and other expenses, and wage costs for train, engine and yard crews. They do not include wages for yardmasters, yard clerks, and yard switch and signal tenders, nor any yard supplies. A further cost study was then prepared to show that the added out-of-pocket expenses per car of moving an additional ten cars per day[7] over this route, based upon the figures for March, would amount to $14.33. Thus, if any one of these cost calculations is to be accepted, it is clear that plaintiff would realize a net profit from the proposed traffic. The discrepancy between plaintiff's calculation of the average out-of-pocket, or variable,[8] costs of handling existing traffic, and its estimate of the added, or marginal,[9] cost of the additional traffic was attributed by plaintiff's witnesses to a number of factors. First, it was shown that under existing schedules it would be possible to handle an additional ten cars daily in both directions without using any additional trains, motive power, crews, or, for the most part, switching operations. Furthermore, plaintiff owned 58 automobile cars, many of them available for immediate use, which were equipped with Evans-type loaders (apparently necessary for such shipments) and an additional 233 automobile cars which could be so equipped at a cost of $1,000 each if the others proved insufficient. Plaintiff also suggested that the cost of existing station and clerical forces were fixed and intimated that such forces were sufficient to handle an additional 200 or 300 carloads per month. For these reasons it included in its estimate of expectable added cost only the expenses of locomotive fuel, repairs and lubricants, and freight-train car repairs.

The intervenors herein, as protestants at the hearing before the examiner, cross examined plaintiff's witnesses in an attempt to demonstrate that its cost studies were

5. The fact that the specific revenue is greater than average in terms of ton-miles and less than average in terms of car-miles is due to the fact that the average weight of plaintiff's cars during 1949 was at least four times as great as that of a car-load of automobiles.

6. These months were selected as the most recent periods for which figures were available at the time of the hearing.

7. Throughout the hearing before the examiner and in the cost studies the parties generally assumed that the shipments would amount to approximately ten carloads per day.

8. Both the Commission in its opinion and the parties at the hearings used the term "out-of-pocket costs" as being synonomous with "variable costs."

9. In the accepted terminology of an economist, these terms would be defined as follows: "Fixed costs are those which remain stable in total amount regardless of changes in the volume of production * * *. Variable costs, on the other hand, are those costs which vary in total amount with every increase or decrease in output. * * * Marginal cost * * * is the addition to total cost which results from increasing output by one unit." Umbreit, Hunt and Kinter, Fundamentals of Economics, 1st ed., 1948, page 157.

inadequate and inaccurate. They also introduced experts of their own and cost studies, based in part upon earlier reports of the Commission, which purported to show that the proposed rate would not be compensatory to plaintiff. These studies were in turn attacked by plaintiff as inadequate for the reason that the recent dieselization of plaintiff's entire equipment had produced such substantial savings in operating costs as to render obsolete the earlier data. Evidence was also introduced by direct and cross examination to show that, even in the post-war years, carriers by rail had been able to compete successfully with motor carriers where the rate differential was as little as ten or twelve cents, and that in the past Chrysler had used a differential of 10 or 12 cents in determining whether to use rail or motor shipments.

The orders under review herein were issued in accordance with the Commission's adoption of the report of its Division 2, which in turn was an acceptance of the examiner's recommendation that the proposed rate be rejected. It is important to a proper understanding of this case to note that the Commission did not pass upon the question of whether the proposed rate was compensatory, which would be necessary to a finding as to whether it was "just and reasonable";[10] nor did it decide whether the rate would be discriminatory, preferential or prejudicial.[11] Its ultimate holding was that:

"We find that the reduced rate under investigation *has not been shown* to be just and reasonable." (Italics added).

The Commission reached this result, after summarizing the evidence, upon the following analysis and findings of fact. First, it was shown that plaintiff's contention that the proposed rate would be compensatory rested upon the cost studies which it had submitted as a guide to estimated costs of

handling the automobile traffic. Plaintiff's calculation of the out-of-pocket costs of handling existing traffic in February and March, however, were found to be defective in the following respects:

(a) They failed to include the cost of track and structure maintenance as a result of tons handled, the cost of payroll taxes and vacation-pay allowances applicable to the labor portion of yard and train services, and an allowance for depreciation and return on the property;

(b) The apportionment of yard expenses, on the basis of tons handled in and out of the terminal, was improper;

(c) Switching costs were overstated because of the failure to include a count of tons handled in intra- and inter-terminal switching; and

(d) Both revenue and expenses were misstated because of the treatment of the bridge and switching service charge as a deduction from revenue rather than as an an addition to expense.

Because of these defects, the Commission found that the cost studies had understated the costs of yard service and omitted many items of expense incident to line-haul movement. For that reason it found that they could not be considered as accurately representing the out-of-pocket costs of handling the existing traffic.

The Commission next examined plaintiff's estimate of expectable added out-of-pocket costs of the prospective automobile traffic. Pointing in particular to the omission of allowances for payroll taxes and vacation pay, it found that plaintiff's calculation of this item was not representative of the costs incurred in handling existing traffic. Furthermore, by basing its estimate of such added costs on the assumption that all existing traffic would continue to be handled at the present revenue and cost relation, plaintiff had omitted many out-of-pocket costs of handling the entire traffic

---

10. Section 15a (2) of Title 49, U.S.C.A., requires that the Commission, in determining whether a proposed rate is "just and reasonable" within the meaning of Sections 1(5) and 15(7) of the same title, consider whether it will provide "sufficient" revenue to the carrier.

11. Unjust discrimination is prohibited by Section 2, and undue preferences or prejudices are forbidden by Section 3(1), of the Act.

and thus assigned to the existing traffic more than its proper portion of such costs. The Commission then concluded that plaintiff's estimate of added cost must also be rejected because:

"The computation of a cost on the expectable basis used by the [plaintiff] fails to account for a large portion of the operating expenses of the carrier, and does not provide a basis for evaluating the compensatory character of the proposed rate."

It must again be observed that the Commission, in concluding that plaintiff had failed to establish prima facie that the proposed rate was just and reasonable, did not pass upon the question of whether it was in fact compensatory. · In finding that plaintiff had failed to hurdle the primary barrier of presenting sufficient evidence to provide a basis for raising any issue as to the compensatory nature of the proposed rate, the Commission found itself in the position of having no foundation upon which to explore the question of the compensatory character of the rate. Furthermore, it must be noted that in its findings the Commission passed upon two very distinct issues. The first, which is essentially the same as that involved in the dispute before the examiner between plaintiff and the protestants, involves the proper method of calculating the variable, or out-of-pocket costs of transporting the then-existing traffic. The other issue, which is fundamental to the dispute herein, involves the question of whether any estimate of only the additional or marginal cost of handling the new traffic is a proper basis for a determination of whether a proposed rate is compensable and therefore reasonable in such a case as this. In other words, assuming that the out-of-pocket costs of existing traffic had been correctly computed, the question remains of whether an estimate of only those additional expenses incurred by the new traffic would be a satisfactory guide in determining whether the rate to be charged is reasonable, at least in a case in which there is no showing that existing traffic will continue at its present volume and revenue.

Keeping the Commission's findings and our analysis thereof clearly before us, we pass to a consideration of the points raised in plaintiff's complaint herein. Briefly summarized, the complaint attacks the orders of the Commission as arbitrary, capricious and in excess of its statutory powers for the reason that (a) they are not supported by requisite findings of fact, (b) the findings made are not supported by substantial evidence, and (c) there is no rational basis for the conclusions reached.

We come first to the question of whether the requisite findings of fact have been made. Upon the application of a carrier to establish a new or revised rate the Commission is authorized, under Section 15(7) of the Act, 49 U.S.C.A. § 15(7), to conduct a fair and complete hearing to determine whether the proposed rate is "just and reasonable", and to make an appropriate order in reference thereto. Under Section 14(1) of the same title and Section 8(b) of the Administrative Procedure Act,[12] it is required to make a written report setting out its findings, conclusions and decisions, together with its reasons therefor on all material issues of fact, law or discretion presented on the record. Except where damages are awarded, the Commission is not required to make the detailed findings of fact required of a trial court by Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A., but it is not relieved of the duty to make basic or quasi-jurisdictional findings essential to the validity of the order. Alabama Great Southern R. Co. v. United States, 340 U.S. 216, 227, 71 S.Ct. 264, 95 L.Ed. 225; Chicago, B. & Q. R. Co. v. United States, D.C., 60 F.Supp. 580, 584. The burden of establishing the facts necessary to support its rate in the proceeding before the Commission is constantly upon the carrier. 49 U.S.C.A. § 15(7); Watson Bros. Transp. Co. v. United States, D.C., 59 F.Supp. 762, 769.

12. 5 U.S.C.A. § 1007(b). The Administrative Procedure Act is applicable to proceedings before the ICC. Riss & Co. v. United States, 341 U.S. 907, 71 S.Ct. 620, 95 L.Ed. 1345.

Plaintiff argues that the Commission's findings of fact are not complete and that it is left in doubt as to why the proposed rate was ordered cancelled. It is true that something more than the ultimate finding that the carrier has failed to sustain the burden of proof is necessary in a case such as this. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821. But where, as here, the ultimate finding is negative in form, it need be supported only by "sufficient basic findings of fact to warrant a reviewing court in concluding that the Commission was not without rational grounds" for holding that burden has not been met. See New York Central R. Co. v. United States, D.C., 99 F. Supp. 394, 401, affirmed Interstate Commerce Comm. v. New York Central R. Co., 342 U.S. 890, 72 S.Ct. 201. In view of the Commission's findings that neither the plaintiff's calculation of existing variable costs nor its estimate of expected added or marginal costs was a satisfactory guide to the compensatory character of the proposed rate, we are not in doubt as to its reasons for holding that the reduced rate had not been shown to be just and reasonable. We find, therefore, that the Commission was not without a rational ground for its holding.

Plaintiff has cited cases such as United States v. Chicago, M., St. P. & P. R. Co., 294 U.S. 499, 508, 55 S.Ct. 462, 466, 79 L.Ed. 1023, holding that a finding that a proposed rate is unjust or unreasonable must be supported by findings which inform the court, "if only approximately, of the extent of the expected loss [and] whether the impairment of revenues will be trivial or substantial * * *." These cases are not in point simply because the Commission in the instant case could not—and therefore did not—pass upon the question of whether the rate was unjust or unreasonable. The finding having been made that the cost studies were unsatisfactory, it was not only unnecessary for the Commission to make the findings which plaintiff demands; it would have been error for it to have done so.[13]

Plaintiff also complains of the Commission's failure to make allegedly requisite findings concerning the necessity of a rate so low as that proposed in order to enable it to regain a fair share of the traffic. Clearly the Commission could not have made findings as to whether the rate was in fact necessary in view of its statement that it could not find upon the record "any adequate support for the claim" made by the plaintiff. True, the Commission did not point out specific defects in the evidence in support of its statement as it did in finding that the rate had not been shown to be compensatory, but its statement, which was negative in form, amounts to a finding that plaintiff had failed to meet its burden of proof in this particular. It must be recognized that the statute's requirements as to how far the Commission is required to go in making its findings are obscured in vague questions of degree. New York Central R. Co. v. United States, supra, 99 F.Supp. at page 401. Certainly its findings need not comply with Rule 52(a), Federal Rules of Civil Procedure. It would seem that the finding strengthens our conclusion that the Commission was not without a rational basis for its ultimate conclusion that the rate had not been shown to be just and reasonable. Even if this is not a basic or quasi-jurisdictional finding, however, it is immaterial inasmuch as the compensatory character of the rate had not been proven.[14]

This brings us to the proposition as to whether the findings are supported by substantial evidence. The hearing

13. Compare Tennessee Valley Authority v. United States, D.C., 96 F.Supp. 409, 414, in which an order of the Commission was set aside and criticized on the ground, among others, that the evidence did not contain sufficient data to permit an appraisal of the cost estimates.

14. The choice of the standard, or factors to be given weight, in determining whether a rate is just and reasonable is left to the discretion of the Commission by Section 15(a) (2). United States ex rel. Maine Potato Growers & Shippers Ass'n v. Interstate Commerce Comm., 66 App. D.C. 398, 88 F.2d 780, 782; Chicago, B. & Q. R. Co. v. United States, supra, 60 F.Supp. at page 585.

and weighing of the evidence is an exclusive function of the Commission, and so long as it does not disregard or arbitrarily and capriciously consider any relevant evidence, its findings cannot be disturbed. Watson Bros. Transp. Co. v. United States, supra, 59 F.Supp. at page 768; 5 U.S.C.A. § 1009. We are not, of course, called upon to substitute our judgment for that of the administrative agency. Capital Transit Co. v. United States, D.C., 97 F.Supp. 614, 619; see Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456, nor do we attempt to do so.

 In particular plaintiff complains that the finding that the proposed rate had not been shown to be necessary is not only unsupported by the evidence, but is contrary to the weight thereof. The entire record has been carefully examined and found to contain ample evidence to refute the statements of plaintiff's witnesses that Chrysler would not consider rail transport without a differential of at least 23 cents per hundredweight. Thus, it was shown by substantial direct testimony and by cross examination of plaintiff's own witness that Chrysler was not directly affected by the dealer's cost of unloading automobiles from rail cars, that for many years it had been Chrysler's practice to use rail transportation unless the differential was less than 10 or 12 cents, and that rail services were so important to its Evansville operations that it sometimes utilized rail transport "at rates that handicap" it. We are not concerned with the weight of the evidence except to ascertain from examination of the entire record whether the Commission's findings are supported. Illinois Central R. Co. v. United States, D.C., 101 F.Supp. 317, 322. In view of the entire record we cannot say that the Commission's finding is contrary to the weight of the evidence or without support of that "quality of proof which induces conviction and makes an impression on reason." N.L.R.B.

v. Thompson Products, 6 Cir., 97 F.2d 13, 15. We hold that this finding is supported by substantial evidence.

 Plaintiff also complains that there is no substantial evidence to support the Commission's rejection of its studies of the out-of-pocket costs of existing traffic. The omissions of certain cost items and making of particular calculations are admitted; the dispute is whether such omissions and calculations were erroneous and, if so, whether they were material. An expert called by protestants, using statistics and accounting methods allegedly approved by the Commission, submitted various estimates of plaintiff's costs on the existing traffic which were far in excess of the proposed rate.[15] He indicated, at least impliedly, that correct accounting of the out-of-pocket costs requires the inclusion of many items admittedly missing from the studies submitted by plaintiff, such as track and structure maintenance and car depreciation. The same witness also expressed the opinion that inasmuch as the cost of handling a ton of goods is directly related to the average weight per carload, and inasmuch as plaintiff's studies disregarded the fact that the weight of its average carload was four or five times as great as that of a carload of automobiles, the cost so calculated would be too low.[16] Plaintiff, although having the burden of proof, offered no evidence of the materiality of some of its conclusions despite the great discrepancy between the costs calculated in its studies and those produced by protestants. We hold that the Commission did not err in finding that plaintiff's cost studies had not been shown to be sufficient. Our conviction in this respect is of course reinforced by the rule that we must give proper weight to the Commission's expertise and familiarity with the problems of railroad accounting. New York v. United States, 331 U.S. 284, 328, 67 S.Ct. 1207, 91 L.Ed. 1492; Board of Trade v. United States, 314 U.S. 534,

---

15. Since the acceptability of the alternative cost studies was not passed upon by the Commission, it is irrelevant that they were also attacked as unsound.

16. The serious question was thus raised of whether good railroad accounting practices would permit the treatment, in effect, of the cost of handling four or five lightly loaded cars as not materially greater than that of handling one heavily loaded car.

546, 62 S.Ct. 366, 86 L.Ed. 432; Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286, 54 S.Ct. 692, 78 L.Ed. 1260.

The Commission's finding that the estimate of expectable added cost of the proposed traffic was an unsatisfactory guide to determining whether the proposed rate would be compensatory is attacked as being unsupported by substantial evidence and as having been made without a rational basis. The first objection is quickly disposed of with the reminder that the Commission found only, in effect, that such a calculation had not been shown to be satisfactory in this case. The estimate was rejected in part because it had been based on an improper calculation of out-of-pocket costs and for the further reason that in the future the "added" traffic might well become the principal traffic through the diversion or loss of existing sources of revenue. Plaintiff offered no evidence to show that this would not happen, nor did it attempt to prove that existing station and clerical forces would continue to be sufficient to handle the additional work. Obviously, therefore, plaintiff cannot complain of the lack of substantial evidence when it failed to present satisfactory cost studies and evidence of stable traffic.

Although the Commission did not directly hold that a cost estimate based on added cost only would not be a reliable test in any case, it would have had ample reason for doing so under the rationale of Northern Pacific R. Co. v. State of North Dakota, on relation of McCue, 236 U.S. 585, 35 S.Ct. 429, 59 L.Ed. 735. In that case the Supreme Court, in setting aside the order of a State court requiring a carrier to transport freight at a rate which would be compensatory, if at all, only in respect to the additional expenses of its transportation, said, 236 U.S. at page 596, 35 S.Ct. at page 433:

"We * * * entertain no doubt that, in determining the cost of the transportation of a particular commodi-ty, all the outlays which pertain to it must be considered. We find no basis for distinguishing in this respect between so-called * * * 'actual' expenses, and other outlays which are none the less actually made because they are applicable to all traffic, instead of being exclusively incurred in the traffic in question. Illustrations are found in outlays for maintenance of way and structures, general expenses and taxes. It is not a sufficient reason for excluding such, or other, expenses to say that they would still have been incurred had the particular commodity not been transported. * * * The outlays that exclusively pertain to a given class of traffic must be assigned to that class, and the other expenses must be fairly apportioned. It may be difficult to make such an apportionment, but when conclusions are based on cost, the entire cost must be taken into account." [17]

To the same effect, see Mississippi R. Comm. v. Mobile & O. R. Co., 244 U.S. 388, 37 S.Ct. 602, 61 L.Ed. 1216.

In view of these cases, the Commission's findings and the evidence in support thereof, we cannot say that the Commission erred in, or lacked a rational basis for, its decision.

The case of United States v. Chicago, M., St. P. & P. R. Co., supra, upon which plaintiff relies, is distinguishable. There the Commission had rejected a proposed rate reduction because of the effect which it would allegedly have upon the whole rate structure of the industry. The Commission's fears were found to be without foundation because it had ample power to prevent the threatened collapse. In the instant case, on the other hand, the Commission is properly concerned with the lack of evidence as to the future effect of forces over which neither it nor the plaintiff may have any effective control, namely, the success of plaintiff's future operations. In discharging its duty the Commission must judge the future

17. In order to avoid confusion we have omitted from this excerpt the Court's reference to "out-of-pocket costs," a term which it apparently used in the sense of "actual" or added costs rather than in the sense—as used by the Commission—of variable costs.

in the light of the past as well as that of the present. State of North Carolina v. United States, D.C., 56 F.Supp. 606, 615, reversed on other grounds 325 U.S. 507, 65 S. Ct. 1260, 89 L.Ed. 1760; New York Central R. Co. v. United States, supra, 99 F. Supp. at page 404. In the Chicago, M., St. P. & P. R. Co. case, supra, the Court could find no clearly expressed basis for the Commission's rejection of the proposed rate other than its unjustified fears of the danger to the rate structure. The Court thus was holding, in effect, that there was no rational basis for the Commission's conclusion. In the instant case we are not confronted with such a situation as the Commission found that the rate had not been shown to be just and reasonable on the obviously rational basis that it had not been shown to be compensatory.

■ We need not discuss plaintiff's contention that the Commission improperly rested its decision in part upon the alleged fact that the questions had become moot or upon the rejection of the proposed rate by the Central Freight Association. There is not one iota of evidence to support this claim; indeed, the Commission clearly indicated that it was merely reciting the history of the case and not attaching any importance to these facts. We cannot accept the suggestion that the Commission should be presumed to have acted improperly in the absence of a clear indication that it did so.

■■ The court has examined the report of the Commission in the light of the judicial authority to review such a decision.[18] We have been ably advised by counsel both by written brief and by oral argument. We hold that the orders of the Commission were not arbitrary, capricious or in excess of its statutory powers, that they are supported by the requisite findings of fact, that the findings are supported by substantial evidence and that the Commission was not without a rational basis for its conclusion. The complaint is therefore dismissed. It is so ordered.

18. "We decide only whether the Commission has acted within the power delegated to it by law." Interstate Commerce

Comm. v. Inland Waterways Corp., 319 U.S. 671, 691, 63 S.Ct. 1296, 1307, 87 L. Ed. 1655.