FORT SMITH BEEPERS, INC.,
Plaintiff,

v.

MOBILEFONE SERVICE, INC., d/b/a
MSI Communications, Defendant.

No. 81–2276.

United States District Court,
W. D. Arkansas,
Fort Smith Division.

Dec. 8, 1981.

686

Mark Moll, Jones, Gilbreath & Jones, Fort Smith, Ark., for plaintiff.

G. Alan Wooten, Warner & Smith, Fort Smith, Ark., for defendant.

## MEMORANDUM OPINION

WATERS, Chief Judge.

This is an action in which Fort Smith Beepers, Inc. seeks damages and injunctive relief on the grounds that Mobilefone Services, Inc. is violating Section 2 of the Sherman Act (15 U.S.C. Sec. 2), Section 2(a) of the Clayton Act (15 U.S.C. Sec. 13(a)) [1] and parts of the Federal Communications Act (47 U.S.C. Sec. 201(b), 203(a), and 204). The case is before the court on plaintiff's motion for a preliminary injunction.

Plaintiff commenced this action on November 23, 1981. The same day the court denied plaintiff's motion for a temporary restraining order after a hearing at which defendant appeared. The court scheduled hearing on plaintiff's motion for a preliminary injunction for November 25, 1981, but postponed it to December 3, 1981, upon plaintiff's oral motion.

---

1. 15 U.S.C. Sec. 13(a) is section 2(a) of the Clayton Act (1914) as amended by section 1 of the Robinson-Patman Act (1936).

From the pleadings, affidavits, and evidence introduced at both hearings, the court can summarize certain facts. In December, 1971, three residents of Western Arkansas, formed Fort Smith Beepers, Inc., for the purpose of marketing portable paging devices to physicians, salesmen, and others in western Arkansas and eastern Oklahoma. The corporation purchased a terminal, cable lines, and the paging devices and leased transmitting space on a radio tower. The equipment was purchased by installment contract. The incorporators personally guaranteed the note for the equipment. The total assets of Fort Smith Beepers is approximately $85,000.00.

Mobilefone Service, Inc. is a foreign corporation with its principal place of business in Tulsa, Oklahoma. It has been in business for over 20 years, engaged primarily in selling and leasing mobile telephones. Mobilefone has offices in 38 cities. Mobilefone has sold and leased portable paging devices from its Fort Smith office for many years. In January, 1980, Mobilefone was the only company offering portable paging devices in the Fort Smith area. It had approximately 100 pager customers and it had not instituted direct dialing paging.

The incorporators of Fort Smith Beepers recognized that many more pagers could be distributed in Fort Smith if a system were employed whereby the caller could directly dial the person to be paged without going through an operator. Fort Smith Beepers was formed and in January, applied for a license from the Federal Communications Commission to operate as a radio common carrier. The license was issued in October, 1980. Before Beepers commenced leasing portable pagers, Mobilefone adopted a direct-dial system.

Both Mobilefone and Beepers sell and lease two types of portable paging devices, voice pagers and tone-only pagers. The sales aspects of their paging business is minimal as most persons prefer to lease the pager to guarantee good service. Each voice pager costs Beepers $210.00; the tone-only pagers cost approximately $180.00.

During the 13 months Fort Smith Beepers was in business before the institution of this action it gained customers at an average of 26 per month, having over 400 lease customers in November, 1981. It leased its tone-only pagers for $24.94 per month and its voice pagers for $35.24. Mobilefone leased its tone-only pagers for $25.19 per month and the voice paging devices for $34.98.

On November 20, 1981, Mobilefone began to advertise through billboards and newspapers that beginning December 1, 1981, it would lease the tone-only pagers for $10.00 per month and the voice pagers for $19.95. The price reductions were implemented only at Mobilefone's Fort Smith office and not in any of the other 37 cities served by Mobilefone. At the time Mobilefone announced its price reductions at the Fort Smith office, its other offices leased pagers comparable to Mobilefone's old rates, that is, $34.98 for a voice pager and $25.19 for a tone-only one.

From the 400 units Fort Smith Beepers has a monthly gross income of approximately $10,500.00. Its monthly expenses are approximately $8,400.00, a figure which includes payments for equipment, rent for its office and tower space, and a salary to its one full-time employee.

Mobilefone Fort Smith's primary business is in the operation of two-way mobile telephones. It has offered evidence tending to establish that Mobilefone's cost per month for a voice pager is $4.49 and $3.75 for a tone-only pager (deposition, Skip Teel, pp. 31 et seq., exhibits C and D).

On November 23, 1981, Fort Smith Beepers commenced the action at bar. It pleaded that the price reductions at Mobilefone's Fort Smith store were an attempt to monopolize the paging device business in Fort Smith in violation of 15 U.S.C. Sec. 2, that they were unreasonable and therefore in violation of 47 U.S.C. Sec. 201(b) and that they were initiated before Mobilefone complied with the requirements of 47 U.S.C. Sec. 203(a) and 204. By amendment plaintiff has pleaded Mobilefone violated 15 U.S.C. Sec. 13(a).

Plaintiff pleaded subject matter jurisdiction under 28 U.S.C. Sec. 1331, a proper statute vesting jurisdiction over private causes of action for violation of the Federal Communications Act. See 47 U.S.C. Sec. 207. Although plaintiff did not plead jurisdiction under 28 U.S.C. Sec. 1337 with respect to its antitrust claim or any conclusional facts concerning the interstate character of the business activities, it did plead that both Fort Smith Beepers and Mobilefone conducted interstate business in the leasing and sales of portable paging devices. The test for subject matter jurisdiction over a Sherman action is whether the defendant's conduct is within the flow of interstate commerce or substantially affects interstate commerce. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *Berardinelli v. Castle & Cook*, 587 F.2d 37 (9th Cir. 1978); *Tiger Trash v. Browning-Ferris Industries, Inc.*, 560 F.2d 818 (7th Cir. 1977); *Uniform Oil Co. v. Phillips Petroleum Co.*, 400 F.2d 267 (9th Cir. 1968). The court is satisfied at this stage of the proceedings that the "relevant product market upon which the substantive claims have impinged is interstate in its geographic aspect." *Tiger Trash v. Browning-Ferris Industries*, 560 F.2d 818, 825 (7th Cir. 1977). By so holding we are not precluding the defendant from establishing at some later time that interstate trade was not affected. See *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 747 n. 5, 96 S.Ct. 1848, 1853 n. 5, 48 L.Ed.2d 338 (1976).

The jurisdictional test for an action under 15 U.S.C. Sec. 13(a) is narrower than the "affects" test applicable under the Sherman Act. The Clayton and Robinson-Patman acts contain an "in commerce" requirement and therefore are applicable only where "at least one of the two transactions which, when compared, generate a discrimination . . . crosses a state line", *Gulf Oil Co. v. Copp Paving Co.*, 419 U.S. 186, 200, 95 S.Ct. 392, 401, 42 L.Ed.2d 378 (1974) quoting *Hiram Walker, Inc. v. A & S Tropical, Inc.*, 407 F.2d 4, 9 (5th Cir. 1969). Although plaintiff has not pleaded that Mobilefone's allegedly discriminatory sales crossed state lines, the evidence has revealed the jurisdictional facts.

15 U.S.C. Sec. 26 authorizes injunctive relief ". . . under the same conditions and principles as injunctive relief . . . is granted by course of equity under the rules governing such proceedings . . . ." The principles applicable to interim injunctive relief contained in Rule 65 govern the motion for a preliminary injunction in an anti trust action. *Kay Instrument Sales v. Haldex*, 296 F.Supp. 578 (D.C.N.Y.1968). In *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) the court clarified the test for interim injunctive relief. Despite plaintiff's contentions to the contrary, the court specifically rejected a two-prong test, holding:

> "In sum, whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflect on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest."

We address each of the four factors.

## IRREPARABLE INJURY

Plaintiff seeks treble damages under 15 U.S.C. Sec. 15 for the harm it contends it has and will incur due to defendant's price cutting. It also seeks damages under the Federal Communications Act, 47 U.S.C. Sec. 207. We hold that in an action for damages a monetary award is deemed adequate unless extraordinary circumstances render it otherwise. See *Lametti & Sons, Inc. v. City of Davenport, Iowa*, 432 F.Supp. 713 (S.D. Iowa 1977); *A.L.K. Corporation v. Columbia Pictures Industries, Inc.*, 440 F.2d 761 (3rd Cir. 1971). The extraordinary circumstances rendering money damages inadequate include situations "when the potential economic loss is so great as to threaten the existence of the moving party's business," *Paschall v. Kansas City Star Co.*, 441 F.Supp. 349, 357 (W.D.Mo.1977) (quoting Wright & Miller,

Fed.Prac. & Pro.Sec. 2948 p. 439–40). Preliminary injunctive relief is also authorized if the amount of financial harm is "impossible to ascertain with accuracy." *Blackwelder Furn. Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 197 (4th Cir. 1977).

By the testimony of plaintiff's own accountant the damages which Fort Smith Beepers will incur due to defendant's price reductions are calculable and even if defendant's price reductions are not stayed, Fort Smith Beepers can remain extant until March, 1982. As this court has set this matter for trial on the merits for February 22, 1982, plaintiff has failed to prove that any harm it will incur is irreparable. As taught in *Dataphase*, ibid, at 114 n. 9, "the absence of a finding of irreparable injury is alone sufficient ground . . ." for refusing to issue a preliminary injunction.

## BALANCE OF HARDSHIP

On November 20, 1981, Mobilefone commenced advertising its lower prices. If this court were to enjoin the reduction of prices Mobilefone's reputation and goodwill would be damaged, as it would be forced to renege on its advertised lower prices. We are not unmindful that Mobilefone is a much larger operation than plaintiff, and the relative size of the two parties is a factor to be considered in ruling on a motion for a preliminary injunction in an antitrust action. *Fashion Two Twenty, Inc. v. Steinberg*, 339 F.Supp. 836 (D.C.N.Y.1971). Nevertheless, the court finds that the issuance of a preliminary injunction would cause harm to Mobilefone, and we do not find that the balancing of hardships tips heavily in favor of Fort Smith Beepers, to say the least.

## PROBABILITY OF SUCCESS

We also hold that plaintiff has failed to demonstrate its probability of success at trial on the merits. As taught in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981) the question of probability of success is not to be determined on a mathematical scale; if the equities strongly militate in favor of granting the injunction, a lesser showing of likelihood of success will suffice. Because the equities are not strongly in favor of Fort Smith Beepers and Fort Smith Beepers has not shown that it will incur irreparable harm before trial, we believe plaintiff must make a substantial showing of likelihood of success.

Plaintiff contends that defendant's price reductions are in violation of 47 U.S.C. Sec. 201(b) which provides, "All charges . . . for and in connection with . . . communication service, shall be just and reasonable, and any such charge, . . . that is unjust or unreasonable is hereby declared to be unlawful . . . ." We hold that plaintiff has failed to establish its probability of success with respect to its claim under the Communications Act of 1934. We rely on *MCI Communications Corp. v. American AT&T Co.*, 462 F.Supp. 1072 (N.D.Ill.1978).

In *MCI* a specialized communications carrier brought an antitrust action against AT&T alleging that defendant had violated the Sherman Act by harassment of plaintiff's customers, illegal tariffs, false and deceptive advertising, discriminatory pricing and trade disparagement. AT&T moved to dismiss contending that exclusive or primary jurisdiction rested in the Federal Communications Commission. The court denied AT&T's motion holding that immunity from the antitrust laws could only be implied after the FCC had approved the challenged actions, that the doctrines of exclusive and primary jurisdiction were inapplicable and:

> (W)hen MCI is complaining about an injury it has suffered as a customer of AT&T by reason of discriminatory service, MCI may have a remedy under (47 U.S.C.) Section 207. When, on the other hand, MCI is complaining of injuries it has sustained as a competitor which has been excluded from its legitimate share of the market, Section 207 provides *no remedy whatsoever.*

*MCI Communications Corp. v. AT&T*, 462 F.Supp. 1072, 1088 (N.D.Ill.1978). (Emphasis added). Subsequent discovery rulings made on the basis of the conclusions reached in *MCI* were affirmed. *Am. Tele.*

*Tel. v. Grady*, 594 F.2d 594 (7th Cir. 1978 ruling, 1979 opinion).

Plaintiff also claims a violation of Section 2 of the Sherman Act (15 U.S.C. Sec. 2) alleging defendant is attempting to monopolize the portable paging business in the Fort Smith area. To establish a prima facie case of attempted monopolization the plaintiff must establish specific intent to control prices or destroy competition, predatory conduct directed to accomplish the unlawful purpose and a dangerous probability of success. *Janich Bros. Inc. v. American Distilling*, 570 F.2d 848 (9th Cir. 1977); *American Tobacco Co. v. United States*, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946); *Morning Pioneer, Inc. v. Bismarck Tribune Co.*, 493 F.2d 383, 386 (8th Cir. 1974). In some situations "... proof of predatory or anti-competitive conduct which can serve as the basis for a substantial claim of restraint of trade will ... permit an inference of specific intent and then in turn of dangerous probability." *Janich Bros. v. American Distilling Co.*, 570 F.2d 848, 854 (9th Cir. 1977). We believe that unless there are other facts and circumstances warranting an inference of intent to monopolize, there should be no inference from the mere reduction of prices until the prices fall below marginal or average variable costs. As stated in *Janich Bros., Inc. v. American Distilling Co.*, 570 F.2d 848, 857 (9th Cir. 1977) "price(s) set at or above marginal cost should not ordinarily form the basis for an antitrust violation." We also believe that unless there are other facts and circumstances making a pricing policy particularly unfair, the mere lowering of prices is not a predatory act unless they fall below short-run marginal or average variable costs. *William Inglis & Sons v. ITT Cont. Baking*, 461 F.Supp. 410, 418 (N.D.Calif.1978). We define "marginal costs" and average variable costs as follows:

"In the accepted terminology of an economist, these terms would be defined as follows: "Fixed costs are those which remain stable in total amount regardless of changes in the volume of production .... Variable costs, on the other hand, are those costs which vary in total amount with every increase or decrease in output. ... Marginal cost ... is the addition to total cost which results from increasing output by one unit." Umbreit, Hunt and Kinter, Fundamentals of Economics, 1st ed., 1948, page 157. *Chicago & EIR Corp.*, 107 F.Supp. 118, 122 n.9 (S.D.Ind.1952).

The third element of attempted monopolization is that there exists a dangerous probability the monopoly will succeed. The presence of many competitors and the ease with which new competitors may enter the business are two facts highly relevant to inquiry. See *United States v. Empire Gas Corp.*, 537 F.2d 296, 305 (8th Cir. 1976).

Plaintiff has failed to demonstrate it is likely to prevail on its Sherman Sec. 2 claim. It has produced no direct evidence of an intent to monopolize on the part of defendant. As it has not established that defendant's prices are below its marginal or average variable costs, we decline to infer intent from the mere reduction in prices. See *Janich Bros.*, ibid, at 858.

Our refusal to make the inference at this stage of the proceedings is supported by other facts shown by the evidence. In Arkansas, radio common carriers such as Mobilefone and Fort Smith Beepers are not subject to rate regulation by the Public Service Commission, although Mobilefone's rates are regulated in Oklahoma and Texas, the two other states in which it conducts business. Mr. Paul Shindell testified by deposition that Mobilefone's Fort Smith paging business had been stagnant since Mobilefone adopted the automatic, direct-dialing system; that Mobilefone wished to determine whether or not the market for portable paging devices was price-sensitive; and that Fort Smith was the best place to conduct such an experiment as it was the only place where the rates are not regulated in which Mobilefone could conduct its experiment on a limited scale. The explanation is reasonable and in the absence of a showing that defendant's prices are below costs, militates against the inference of predatory intent.

The evidence also reveals that Mobilefone would have little to gain by driving Fort Smith Beepers out of business, as it costs less than $20,000.00 to enter the paging device business. As the cost of entering into competition with Mobilefone is small, there is little assurance that Mobilefone could succeed to obtain or maintain a monopoly.

The small amount needed to enter the business also indicates Mobilefone is not likely to succeed in establishing a monopoly in the portable pager business in the Fort Smith area. Charles Wells and Don Patrick testified they intended to enter the portable paging business, having applied for a license from the FCC. Although Messers. Wells and Patrick do not plan to actively solicit pager customers and are in a different financial situation from plaintiff, their evidence reveals the relative ease with which businessmen can enter the portable paging business and shows that Mobilefone will not be without some competition in the Fort Smith area, regardless of Fort Smith Beeper's survival.

We point out we are not rendering a decision after trial on the merits. The plaintiff has not had much time to make discovery. In ruling on plaintiff's motion for a preliminary injunction we are required to determine if it has shown it is likely to prevail at trial. The facts plaintiff has proved are all neutral; they no more point to an attempt to monopolize or a predatory practice than they point to a legitimate business decision. We are not saying plaintiff will not ultimately be able to show a violation of Section 2 of the Sherman Act; we are merely saying that it has not yet evinced one fact which indicates it will ultimately succeed.

 To establish a cause of action under Section 2(a) of the Clayton Act as amended by the Robinson-Patman Act, 15 U.S.C. Sec. 13(a), plaintiff must prove four essential propositions:

(1) That the defendant is engaged in commerce; (2) that, in the course of such commerce, the defendant has discriminated in price between different purchasers of commodities of like grade and quality; (3) that "either or any of the purchases involved in such discrimination are in commerce", and (4) that there is likely to be a severe, adverse effect on competition.

*Cliff Food Stores, Inc. v. Kroger, Inc.*, 417 F.2d 203, 208 (5th Cir. 1969). A price discrimination is a mere price differential but "price discrimination is not *per se* illegal." *International Air Ind., Inc. v. American Excelsior Co.*, 517 F.2d 714 (5th Cir. 1975). In determining if a particular pricing policy is illegal because it is anti-competitive, one must examine "the price discriminator's costs, rather than his competition's costs ...," *International Air Ind., Inc.*, ibid, at 724–725, as the Act is concerned with the effect upon primary line competition, not merely primary line competitors. Ibid, at 720–721 n. 11. For this reason in primary line cases, such as the one at bar, to be illegal the price differentials must be predatory. *International Air Ind., Inc. v. American Excelsior Co.*, 517 F.2d 714 (5th Cir. 1975).

We have previously pointed out that plaintiff has not established Mobilefone's prices are below cost or tendered any other evidence indicating Mobilefone's actions were predatory. In the absence of such evidence, we cannot say plaintiff has met its burden of establishing probability of succeeding on its 15 U.S.C. Sec. 13(a) claim.

## PUBLIC INTEREST

As there has been no showing Fort Smith Beepers will go out of business before this action can be tried, the public's interest in lower prices indicates the preliminary injunction should not issue.

In sum we have found that plaintiff has failed to establish irreparable harm, the *sine qua non* always in issue in a motion for a preliminary injunction. We have also held that the balance of hardship and the public interest do not present a strong case for the issuance of the injunction. As the equities do not present a strong case for the issuance of the injunction the court has

required a substantial showing of probability of success, a burden plaintiff has not discharged.

An order will be entered in accord with this opinion denying the plaintiff's request for a preliminary injunction.