RYKO MANUFACTURING
CORPORATION, Plaintiff,

v.

DELTA SERVICES, INC., a Louisiana
Corporation, and Ray J. Black, III,
Individually, Defendants.

Civ. No. 83–352–E.

United States District Court,
S.D. Iowa, C.D.

Dec. 9, 1985.

Edward W. Remsburg, Des Moines, Iowa, for plaintiff.

B.R. Malbrough, New Orleans, La., for defendants.

ORDER

DONALD E. O'BRIEN, Chief Judge.

The court has before it defendants' motions for a preliminary injunction and to compel plaintiff to comply with this court's order of May 24, 1985. An evidentiary hearing was held on this matter at which counsel for all parties was present. After carefully considering the briefs, oral arguments and evidence, the court grants plaintiff's motion for a preliminary injunction in part and denies it in part. The court also grants defendants' motion to compel plaintiff's compliance with this court's previous order.

I. *Defendants' Motion for a
Preliminary Injunction.*

In determining whether a preliminary injunction should be issued, the court is guided by *Dataphase Systems, Inc. v. C L Systems,* 640 F.2d 109 (8th Cir.1981), where the Eighth Circuit Court of Appeals found:

Whether a preliminary injunction should issue involves consideration of (1) the

threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on the other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Id.*, at 114. As a general rule, a movant has not established irreparable harm where damages would adequately compensate the movant for the asserted harm. *See ABA Distributors, Inc. v. Adolph Coors Co.*, 661 F.2d 712, 714 (8th Cir.1981). Yet, irreparable injury has been characterized as loss of a movant's enterprise. *See Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir.1970); *Fort Smith Beepers, Inc. v. Mobilefone Service*, 533 F.Supp. 685 (W.D.Ark.1981); *Paschall v. Kansas City Star Co.*, 441 F.Supp. 349 (W.D.Mo.1977).

The defendant has presented several actions it would like to enjoin. Delta summarized its position by breaking it down into thirteen points in the final argument during the injunction hearing. For the sake of simplicity, the court will address the injunction in terms of the thirteen points in the order in which they were presented.

■ *Point 1.* Delta first requests that Ryko pay Delta its commission within three days after Delta has turned in an installation completion form. At the hearing on this motion, Tom Carlton, the national sales manager for Ryko, testified that while Ryko had been tardy in previous commission payments to Ray Black, for the last year and a half, Ryko had been averaging payments in less than five days. Black, however, testified that he is still waiting a long time for his commissions.

In applying the *Dataphase* factors to this problem, the court finds that the tardiness of the commissions is likely to threaten Delta's "business enterprise" in that Delta is being denied payments that help keep the business afloat. The court finds the harm involved in delinquent commission payments to greatly outweigh any injury inflicted on Ryko if this court were to require Ryko to make prompt commission

payments to Delta. Further, prompt payments would likely lead to better relations between the parties. With respect to the third factor, the probability that the movant will succeed on the merits, the court finds this action to fall under defendants' claim that Ryko is not acting in a business-like manner. The likelihood that plaintiff will ultimately prevail must be examined in the context of the relative injuries to the parties and the public. *Dataphase Inc. v. C L Systems, Inc.*, 640 F.2d at 113. Where the movant has raised a substantial question and equities are otherwise strongly in his favor, the showing of success is less stringent. *Id.* At minimum, the instant case presents this court with a controversy. In light of the other equities involved, the court concludes that Delta has established a sufficient probability of success on the merits to be entitled to preliminary relief. Finally, as to the public interest factor, the court finds that the granting of the requested injunction would not harm the public.

Having considered the *Dataphase* factors, the court therefore holds that Ryko should be required to reimburse Delta in a prompt manner. The court finds that five days from receipt of the installation completion form is a reasonable time requirement and therefore orders Ryko to pay Delta within that amount of time.

■ *Points 2, 3, 5 and 6.* In Points 2, 3, 5 and 6, defendants ask the court to order plaintiff to increase efforts in helping defendants sell Ryko equipment in Louisiana. In particular, defendants ask that (1) Black be able to attend all meetings involving Ryko officials and potential buyers occurring in Louisiana, as well as all conventions or trade shows in that state, (2) Dayton Hedges be assigned sales representatives in Louisiana, and (3) Black be able to talk to more Ryko officials.

With respect to allowing Black the opportunity to attend meetings, conventions and trade shows involving Ryko in the State of Louisiana, the court finds that Black's absence from such events is very embarrass-

ing for Black and would injure Delta Services' "business enterprise," and therefore, finds that there is a threat of irreparable harm. The court also finds that the harm that would occur from allowing Black to attend such events is greatly outweighed by the harm that would occur if Black were prohibited from attending. With regard to *Dataphase* factors three and four, the court adopts its analysis as given in its review of Point 1 above. As a result, the court finds that Black is entitled to notification of any meeting between a Ryko official and a prospective buyer in the State of Louisiana as well as any convention and/or trade show in that state. Black also has the right to attend such meetings and events if he so desires.

With respect to defendants' request that plaintiff be able to talk to more Ryko officials, Tom Carlton testified that only Julian Klein and Jim Nelson do not speak with Black. While Ryko at one point allowed only Carlton to speak with Black, any Ryko official except for Klein and Nelson is now able to speak with Black. Because Black can speak with all but two officials, the court is unable to find defendants irreparably harmed.[1] A finding that there is no irreparable harm is sufficient grounds for denying a preliminary injunction. *See Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d at 114 n. 9. As a result, the court denies defendants' motion for a preliminary injunction as to that point.

Applying the *Dataphase* factors to defendants' request to have Dayton Hedges become the sales representative in Louisiana, the court is again unable to find that defendants are being irreparably harmed by not being able to deal with Dayton Hedges. The court therefore denies defendants' motion as to that point. The court reiterates its past position that it would be to both parties' best interest to cooperate in their dealings with each other.

■ *Points 4 and 8.* Defendants further request that under the existing contract they be able to sell truck and van washes as well as participate in Ryko's leasing program. Tom Carlton testified that other Ryko distributors who were selling such washes or participating in the leasing program have done so only after signing a new contract. It is defendants' position that the contract now existing covers all of the above things. This is a major issue in the case on which the court is not prepared to make a ruling until after a trial on the merits.

In applying the *Dataphase* factors, the court finds that an injunction should not be issued on this point. First, it appears at this point that defendants could be adequately compensated by monetary damages, which would prevent the issuance of an injunction. Further, the court finds that Ryko would be harmed if it were forced to supply Delta with van and truck washes as well as allowing Delta the opportunity to participate in the leasing program in that Ryko would be forced to treat its distributors on an unequal basis. As a result, the court finds that Delta is not entitled to truck and van washes as well as participation in the leasing program. Nevertheless, the court finds that Ryko would not be harmed by being required to send Delta all information it has supplied to other distributors on the van and truck washes as well as the leasing program. The court therefore orders that Ryko supply Delta with such information.

*Points 7 and 12.* Delta also requests that Ryko be required to pay Delta commissions on three machines sold in the State of Louisiana by parties other than Delta. It appears to this court that any harm suffered by Delta in the sale of such machines is purely monetary and, therefore, an in-

---

**1.** While the court believes that a resolution of the disputes between the parties in this case would be better handled between the parties privately, it notes that this litigation has probably heightened hostility between Black and Ryko's two owners, Klein and Nelson. As a result, the court will not force these people to speak with each other. However, while the court makes such a ruling, it is still of the position that the parties would be in better financial positions if they attempted to work toward harmonious relations.

junction should not issue.[2] *See ABA Distributors, Inc. v. Adolph Coors Co.*, 661 F.2d 712 (8th Cir.1981). Further, at this point the court is doubtful that Delta would prevail on the merits of such a claim, because the court reads the exclusive contract in dispute to not include these three machines. However, the court may find differently in light of evidence not yet presented.

■ *Point 9.* Delta requests that Ryko be ordered to comply with the shipping dates it gives Delta. Testimony at the injunction hearing indicated that Ryko had been tardy in several shipments to Delta. However, Black testified that at this point he had not been harmed by any of the delays. Furthermore, Tom Carlton testified that it is highly unlikely that any delay shall occur in the future, since the past delays were primarily caused by Ryko's factory move, which is now completed. It is the court's position that since defendants have not been harmed and Ryko has stated that it is unlikely that there will be any delay in shipments, an injunction should not be issued at this time. However, this court will promptly reconsider this matter should delays occur.

*Point 10.* Plaintiff requests that the Texaco T.B.A. program be abolished. The court finds that such a request goes to the heart of an antitrust issue presented in this case. At this point, with the evidence now before it, the court cannot find that there is a violation of any antitrust law. Further, it is the position of the court that it has no authority to anticipatorily rule that there is such a violation. Finally, the court is not at all convinced that Delta has met its burden of proof under *Dataphase* to grant an injunction on this issue. Primarily, the court is not convinced that the balance of harm weighs in Delta's favor. Therefore, the court denies Delta's motion as to that point.

*Point 11.* Delta requests that Ryko be required to forward all copies of correspondence and purchase orders on any ma-

chines involving Delta. The court finds its discussion regarding points 2, 3, 5 and 6 to be applicable here. As a result, the court finds that Ryko should comply with the above request forthwith.

■ *Point 11A.* Delta requests that there be some sort of accounting or statement as to who is responsible for the sales tax as to the three machines sold in Louisiana by non-Delta parties. Plaintiff's Exhibit 1 makes it clear that the sales tax on the machines sold by Lewis Car Wash Systems, Inc. was paid by the buyer himself. However, no evidence was presented as to who was liable for the sales tax on the machines in Minden and Shreveport. A reading of the contract in dispute indicates there is a question as to whether Delta is liable for such taxes. The court finds that Ryko would be little harmed in being required to inform Delta as to who is liable for such taxes. The court therefore orders that Delta supply such information to Ryko within fourteen days of the date of this order.

*Point 13.* Delta requests that commissions not be further reduced pending litigation. Ryko argues that commissions were never an issue in the injunction hearing and that no evidence was presented on that question. The court is in agreement and, therefore, shall not rule on such a request.

The court notes that during the hearing plaintiff offered two exhibits (2 and 4) on which the court reserved a ruling until defendants could review them. Defendants have informed the court after their review that they have no objections and, therefore, the court admits into evidence plaintiff's Exhibits 2 and 4.

II. *Motion to Compel.*

In its motion to compel Ryko's compliance with this court's order of May 24, 1985, Delta states that Ryko has failed to supply it with a free R7B Rollover car wash machine and Select-A-Cycle with coin box, freight prepaid. Ryko argues that under the "distributor incentive program,"

---

**2.** Unlike the situation with Delta's prompt receipt of commissions of machines it sold, the

court does not find that payment here would aid defendants' "business enterprise."

Delta did not meet the requirements to entitle it to a machine and coin box, because it was not one of the top state distributors in sales quota for 1984. The court is not convinced by Ryko's argument and stands by its order of May 24, 1985. The court notes that Delta was never informed of the distributor incentive program until after it had been implemented and this prevented Delta from participating in the distributor incentive program on a fair basis. The court therefore orders that Ryko abide by the court order of May 24, 1985 and immediately ship to Delta an R7B car wish machine with a Select-A-Cycle and coin box, freight prepaid.

Finally, the parties have informed the court that they will be ready for trial by February of 1986. Therefore, the Clerk of this court is directed to schedule trial in this case at the soonest available time after this date with the exception of the week of February 10, 1985.

IT IS THEREFORE ORDERED that defendants' motion for a preliminary injunction be granted to the extent that:

1. Ryko pay Delta commissions within five days of receipt of installation completion forms.

2. Ryko inform Ray Black of any meeting between a Ryko official and prospective purchaser in the State of Louisiana. Ray Black shall have the opportunity to attend such meeting.

3. Ryko shall inform Delta of any convention or trade show that it is involved in in the State of Louisiana and Ray Black shall be allowed to attend.

4. Ryko shall forthwith supply any information concerning the truck and van wash system as well as the consumer leasing program currently offered by Ryko.

5. Ryko shall forward copies of all correspondence and purchase orders involving machines sold by Delta.

6. Ryko shall inform Delta within fourteen days of the date of this order as to who is liable for the sales tax of the Minden and Shreveport machines sold by non-Ryko distributor.

IT IS FURTHER ORDERED that plaintiff's Exhibits 2 and 4 offered at the hearing of August 7, 1985 be admitted.

IT IS FURTHER ORDERED that defendants' motion to compel plaintiff to comply with this court's order of May 24, 1985 be granted and Ryko is directed to deliver Delta a free R7B Rollover car wash machine and Select-A-Cycle with coin box, freight prepaid, forthwith.

IT IS FURTHER ORDERED that the Clerk of this court schedule trial of this case the soonest available time after February 1, 1985, excluding the week of February 10, 1985.